**E. BROOKE MATLACK, INC., a Pennsylvania Corporation**

**v.**

**Randolph Roger WALRATH.**

**Civ. A. No. 9106.**

United States District Court
D. Maryland.
Sept. 22, 1959.

Frederick J. Green, Jr., Baltimore, Md., for plaintiff.

William F. Mosner, Lutherville, Md., for defendant.

R. DORSEY WATKINS, District Judge.

On August 29, 1956 this action was brought by E. Brooke Matlack, Inc. (Matlack) against the defendant Randolph Roger Walrath (Walrath) to recover expenditures allegedly necessitated by an accident occurring in Pennsylvania on December 31, 1952, when a tractor-trailer owned by Walrath and operated by his employee, Janaskie, collided with a Greyhound bus. At the time of the accident there was in effect between Walrath as lessor and Matlack as lessee an equipment lease agreement covering, among other tractors and trailers, the tractor-trailer involved in the above mentioned collision. Numerous passengers on the bus were injured and, accordingly, on their behalf claims were made and/or suits instituted in this court and other courts against both Matlack and Walrath.[1] A claim for property damage was also asserted by the Pennsylvania Greyhound Lines, Inc. Matlack, as a defendant in the suits brought by the injured passengers, filed cross-claims against its co-defendant Walrath. These cross-claims were later dismissed by a stipulation which provided that the withdrawal of the cross-claims was without prejudice and that Walrath would interpose no objection to any action brought by Matlack, subsequent to the trial of the negligence suits, against Walrath, for the purpose of Matlack's asserting a claim to indemnity. The complaint in the instant case alleges that in an effort to mitigate damages and to dispose of the pending claims and suits as economically as possible the plaintiff effected settlement of all of said claims and suits by paying in settlement the sum of $131,-712.85 and in addition incurring costs of $4,627.37 and that, as its liability to the various claimants is based solely on the negligence of Janaskie, the agent, servant and employee of the defendant Walrath, it is entitled to full reimbursement in the amount of $136,340.22 from defendant Walrath.

After answering the complaint and asserting a number of defenses, the defendant, through discovery proceedings, had by March of 1958 established that Matlack was insured primarily with the American Fidelity and Casualty Co. with excess coverage provided by certain underwriters at Lloyd's pursuant to the terms of a policy issued by Coast Surplus Lines, Inc.; that "the settlements of $131,712.85 and costs of $4,627.37, mentioned in the Complaint, [were] paid by American Fidelity and Casualty Company, Inc. and Coast Surplus Lines Agency, Inc. under the terms of the policies * * *";[2] and that "* * * the American Fidelity & Casualty Company made the various settlements until the primary retention of 10/20/10 was paid. It is the understanding of the plaintiff that all excess payments were made by the assured and that Mendes and Mount paid the assured and the assured issued its check."[3] Accordingly, in view of Rule 17(a), F.R.Civ.P., 28 U.S.C.A., providing that every "action shall be prosecuted in the name of the real party in interest" and in view of the specific application of this rule by the Supreme Court in United States v. Aetna Casualty & Surety Co., 1949, 338 U.S. 366, 380–381, 70 S.Ct. 207, 215, 94 L.Ed. 171, to the case of an insurer-subrogee wherein the court stated if "the subrogee has paid an entire loss suffered by the insured, *it is the only real party in interest and must sue in its*

---

1. A naming or consideration of the various other defendants joined with Matlack and Walrath in a number of these suits is omitted as being immaterial to the issues presently before the court.

2. Defendant's interrogatory number 3 (second set) and plaintiff's answer thereto.

3. Plaintiff's answer to defendant's interrogatory number 4 (second set).

*own name"* [4] it was manifestly clear that as the pleadings then stood the plaintiff had no right to maintain the cause of action alleged. See also: American Fidelity & Casualty Co., Inc v. All American Bus Lines, Inc., 10 Cir., 1949, 179 F.2d 7, certiorari denied 1951, 342 U.S. 851, 72 S.Ct. 79, 96 L.Ed. 642. The defendant was fully aware of the situation and in his memorandum on this point states: [5]

> " * * * At this point, Walrath's attorney researched the law * * * and well realizing his tactical position and the impossibility of Matlack's recovering in the suit as brought, [he] attended the pre-trial conference before this Court on March 26, 1959. At this conference, Walrath admittedly did not request Matlack to amend his suit, for such an amendment would certainly not be advantageous to Walrath—he being in an impregnable position. The Court, no doubt recognizing the obvious fact that insurance companies [6] had an interest in the outcome, raised the issue as to whether they should be made parties Plaintiff or Defendant." [7]

The record shows that during the pretrial conference mentioned above the court, sua sponte, raised the question as to the necessity or desirability of the insurance carriers of both plaintiff and defendant being made parties to the suit. Counsel stated they did "not desire to make any changes in the parties of record." The memorandum of that conference in pertinent part further indicates that the parties of record stated the issues involved to be as follows:

> " * * * 3. Defendant does not contest the reasonableness of the settlements as such; plaintiff contends the settlements were pursuant to an agreement that they would be without prejudice and that the liability between plaintiff and defendant should subsequently be determined. Defendant denies such agreement, and, therefore, contends that the plaintiff, in substance, is a volunteer. The question of the circumstances of such agreement vel non is the vital issue in the case."

> * * * * * *

> "5. Both parties agree that defendant was in complete control of the truck and driver on the return trip in the course of which the accident occurred. Plaintiff contends, however, that the law with respect to such responsibility was not settled at the time of the accident or at the time when the alleged agreement to settle without prejudice was made, and that the uncertainty was one of the reasons for such alleged agreement. Defendant denies personal knowledge of the alleged agreement for settlement without prejudice. Defendant, however, admits that he was represented by an attorney furnished by his insurance carrier. The questions, therefore are (a) was such an agreement in effect made, and (b) if so was it binding personally on the defendant."

> "6. * * *

> "Defendant contends that if at the time of the accident there was a joint operation, then he was covered

---

4. Emphasis supplied.

5. Defendant's memorandum, page 2.

6. The insurance carriers referred to include not only the plaintiff's two insurers but also the defendant's insurer, as at the time of the accident Walrath carried a policy with the Keystone Automobile Club Casualty Company [Key-

stone]. That company has throughout related proceedings denied coverage by virtue of a fifty mile radius provision in said policy.

7. Regarding parties defendant, the court was raising the issue as to whether or not the defendant's carrier should be brought in as a third-party defendant.

by Matlack and/or his policy, and there would be no personal liability; if (as is now admitted) the operation at the time was solely for the benefit of defendant, then plaintiff had no obligation or liability, and the settlement was that of a volunteer, from which no personal liability on the part of the defendant would arise."

It was further agreed "for the purpose of this trial that negligence on the part of Janaskie [defendant Walrath's employee] may be assumed".[8]

On the day set for the taking of testimony relative to the determination of the issues, as settled at the pretrial conference, the court again restated its concern about the nominal party plaintiff. Counsel for plaintiff then made an oral motion for leave to amend the pleadings to enter the case in the name of the plaintiff to its own use and to the use of Markel Service, Inc., American Fidelity & Casualty Company, and Mendes and Mount as attorneys for certain underwriters at Lloyd's as their interest may appear. This motion was accompanied by the following statement of facts:

"* * * First, that the American Fidelity and Casualty Company of Richmond, Virginia issued a policy with limits of 10/20/10 to E. Brooke Matlack, Inc.; that at the same time there was an excess policy of insurance issued by Coast Surplus Lines Agency, Inc. as representing certain underwriters at Lloyd's to E. Brooke Matlack, Inc.; that the money in dispute, roughly $136,000, was paid as follows: $35,-000 by Markel Service, Inc. on behalf of the American Fidelity and Casualty Company, Inc., and $101,000 by Mendes and Mount representing the same underwriters involved in the policy of the Coast Surplus Lines Agency, Inc. The payment by Men-

des and Mount on behalf of certain underwriters and by Markel Service, Inc. on behalf of the American Fidelity and Casualty Company were made pursuant to the aforementioned policies of insurance. The particular method used by Mendes and Mount in the payment of their $101,000 was to pay that money to E. Brooke Matlack, Inc. by virtue of a loan receipt dated June 5, 1956." [9]

This motion was opposed by defendant on the grounds that plaintiff, having full knowledge of the true facts, was bound by its pleadings and its sworn answers to defendant's interrogatories and that any such amendment, if allowed, would be highly prejudicial to the defendant because of the defendant's waiver, for the purposes of this case, of other possible defenses.

■ By his own admission as early as March of 1958 the defendant had full knowledge of the "true facts" insofar as they were reflected by the pleadings and through discovery proceedings and further knew that under the applicable law the plaintiff had no standing to bring the instant suit. "An objection that the plaintiff is not the real party in interest must be made with reasonable promptness and may be waived by delay" (2 Barron & Holtzoff, Federal Practice and Procedure, Rules Edition, section 382, pp. 22–23; See also: Clark v. Chase National Bank of City of New York, D.C.D. N.Y.1942, 45 F.Supp. 820, 823–824 and cases cited therein). Clearly defendant has not complied with Rule 9(a), F.R. Civ.P., 28 U.S.C.A. dealing with pleading special matters and requiring inter alia that when "a party desires to raise an issue as to * * * the capacity of any party to sue, * * * he shall do so by specific negative averment, which shall include such supporting particulars as

8. Defendant's counsel; transcript of proceedings, pp. 8–9.

9. Transcript of proceedings, pp. 19–20.

are peculiarly within the pleader's knowledge." The defendant rather preferred to pitch his entire case on the so-called "volunteer" issue present in this suit. This is evidenced by the defendant's pleadings, by his formulation of, or agreement as to, issues at the pretrial conference, and by his failure ever in any way to raise the question of the plaintiff's capacity to bring this suit even after the problem had twice been called to counsels' attention by the court. Indeed technically, as of the present time, defendant's sole objection as of record is not to plaintiff's capacity to sue but to plaintiff's proposed amendment. Nevertheless the court is not inclined to dispose of this matter on the ground of a waiver by defendant of his right to insist upon a compliance with Rule 17(a) that every "action shall be prosecuted in the name of the real party in interest".

■ The propriety of allowing the proposed amendment is governed by Rule 15(a), F.R.Civ.P., 28 U.S.C.A. and "leave shall be freely given when justice so requires." Both sides in this case have taken the position that this action is in reality a fight between insurance companies.[10] It would therefore seem logical to the court, aside from any question as to who is the real party in interest possessing the requisite capacity to bring suit, that the insurance carriers should be made parties litigant. Of course, at this point the court has no motion before it to bring in defendant's insurer as a third-party defendant. Accordingly, the plaintiff's motion for leave to amend to enter this suit in the name of the plaintiff to its own use and to the use [11] of Markel Service, Inc., American Fidelity & Casualty Company, and Mendes and Mount as attorneys for certain underwriters at Lloyd's as their interest may appear is granted on the conditions hereinafter mentioned.

There is much merit to the defendant's contention that had the plaintiff originally brought the case to the use of the insurance companies, Walrath at that time would also have brought in Keystone as a third-party defendant that he might further have attempted to contest the reasonableness of the settlements, to raise the issue of his driver's non-negli-

10. Sometime in May of 1954, Walrath through its present counsel filed in the Maryland State Courts a suit against its insurer Keystone for a declaratory judgment as to the issue of coverage. Ultimately Walrath, as plaintiff, dismissed that suit. There is presently pending in a Pennsylvania state court a suit brought, during the December 1958 term of that court, by Matlack against Keystone and Walrath. Matlack, as an additional named insured by endorsement on Walrath's policy with Keystone, is seeking a judgment that it is "either (a) entitled to recover the damages which it has sustained as a result of said accident from respondent, Keystone Automobile Club Casualty Company, or (b) in the event that it is successful in its suit against respondent Walrath then it should be entitled to be subrogated to the rights of Walrath and to recover from respondent Keystone Automobile Club Casualty Company." Stating that the issues being litigated in Pennsylvania are the same as those being litigated in the instant suit, and thus even should the plaintiff's cause of action be dismissed here the plaintiff would not find itself in the unfortunate position of being out of court, defendant's counsel has made the further observation that there "the court can well decide the issues apart from the many bothersome aspects which face the court in Maryland." As enticing as this suggestion is, the court declines to yield to temptation. In addition, although this court has not studied the problem and therefore has and expresses no opinion thereon, the possibility of the plaintiff's cause of action in Pennsylvania being barred by a plea of limitations must be considered and the present issue before this court decided in view of such a possibility.

11. As to the Maryland practice in entering the case to the use of the insurance carrier see: Poleski v. Moore-McCormack Lines, Inc., D.C.D.Md.1958, 21 F.R.D. 579, 582.

gence, and to bring out the full facts of the working agreement between him and Matlack in an effort to show that he was, at law, still about Matlack's business on the return trip, and that he, Walrath, was, therefore, covered by Matlack's insurance policies. Therefore leave to amend is conditioned upon a reservation of the defendant's right to raise any of the above mentioned possible defenses and to make a motion to bring in Keystone as a third-party defendant. Further, plaintiff will be required to file a written motion to amend and an amended complaint, both of which shall contain a statement of facts similar to those previously quoted in this opinion [12] as relied upon by the present plaintiff to indicate the real parties in interest and the propriety of, and necessity for, said amendment. After the filing of these papers the defendant shall have the right by discovery or any other appropriate procedure to acquaint himself with the exact provisions of any loan agreements, loan receipts, collateral contracts or the like, relevant to the instant suit. The possible importance of such provisions is clearly indicated by the case of Miller v. Pine Bluff Hotel Co., D.C.D.Ark.1959, 170 F. Supp. 552 where the question of who was the real party in interest was governed by the construction of the terms of a loan agreement, and related documents, as well as by the substantive law of the state where the insurance contract was made, as some of the courts in that state seemingly recognized an exception to the "Loan Receipt Settlement" doctrine.

It is readily apparent that to attempt to rule at this time on any of the issues previously formulated by the parties would be premature and in the nature of an advisory opinion. Accordingly, the court restricts its decision solely to the plaintiff's motion for leave to amend.

Leave is hereby granted upon the conditions heretofore set out in this opinion.