**GIFFORD–HILL–WESTERN, INC., a corporation, Appellant (Plaintiff below),**

v.

**Rodney ANDERSON, Appellee (Defendant below).**

**No. 3968.**

Supreme Court of Wyoming.

May 3, 1972.

Rehearing Denied June 6, 1972.

Arthur Kline, of Kline, Tilker & Lynch, Cheyenne, for appellant.

Maxwell E. Osborn, of Osborn & Grant, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

PARKER, Justice.

Gifford-Hill-Western, Inc., sued Rodney Anderson for $3,755.92 balance claimed to be due on a purchase contract of a sprinkler system, recognizing in its complaint delays in the ability of Anderson to operate the system but asserting his acquiescence thereto. Defendant admitted the contract, denied that the delays were his fault, and stated that because of the late installation of the system the growth of the sugar beets on the premises was arrested and resultant damages were sustained by defendant in the amount of $5,625. In addition to his defending on that ground, Anderson filed a counterclaim for the mentioned amount. The case was tried to a jury which rendered a verdict, finding that plaintiff was entitled to the unpaid balance of the contract, $3,755.92, and $512.52 interest, for a total of $4,277.44,[1] and they further assessed defendant's damages in the sum of $4,170, leaving a difference of $107.44 due to plaintiff. From

1. The verdict contained an error in addition, the correct total being $4,268.44.

that part of the judgment entered on this verdict awarding defendant damages, plaintiff has appealed, urging that Anderson was not the real party in interest, that he had waived his right to insist that the contract should have been performed prior to April 1, 1969, and was estopped by his conduct from holding appellant to that date, that Anderson had failed to prove damages, could not recover for consequential damages, and that the damage to the sugar beets if any was not the result of the failure to install the sprinkler system by April 1, 1969.

The circumstances which led up to the controversy are not complicated: Early in 1969 Gifford-Hill-Western and Anderson entered into a "360 Sprinkler Contract." Installation was to be on land owned by the Anderson Livestock Company of which Anderson was a stockholder and secretary-treasurer.[2] Inserted in the contract was the provision, "to be installed prior to April 1, 1969." Although the defendant maintains that the term "sprinkler system" included the "sprinkler itself and the irrigation pipe," Gifford-Hill-Western and the Anderson Livestock Company entered into another written contract on March 31, 1969, for the sale and installation of 2,760 feet of pipe and fittings. (Defendant testified there was no provision in that contract for time of installation since he was told by the salesman that it would only take a day or two.) The installation of the sprinklers on the Anderson land was completed about April 28, but the last work on the pipeline was not performed until May 18. Planting of the sugar beet crop on the Anderson land started on April 20 or 22 and continued for several days. This work was done by Leonard Fornstrom whose agreement with the Anderson Livestock Company, landowner, was that he would receive 50 percent of the crop for performing all farm operations. Testimony was adduced that the beets planted on

the portion of the land which had been in wheat the previous years turned brown and died from lack of moisture, which could have been supplied by the sprinkler system, and replanting resulted in a forty to sixty-day loss of growing season. Claim for damages was based on the fact that yield on land about a mile away was 21.0 tons per acre while the Anderson yield was 15.9 tons per acre.

■ Addressing ourselves to the first mentioned basis of the appeal, we note that the cases cited by plaintiff are not in point as to facts. Moreover objection in the trial court that Anderson was not the real party in interest was not voiced until the close of the evidence and such delay constituted a waiver of any objection on that ground. E. Brooke Matlack, Inc. v. Walrath, D.C.Md., 24 F.R.D. 263, 266–267; United States Fidelity & Guaranty Co. v. Slifkin, N.D.Ala., 200 F.Supp. 563, 573; 6 Wright and Miller, Federal Practice and Procedure: Civil § 1554, p. 701 (1971); and see Pickett v. Associates Discount Corporation of Wyoming, Wyo., 435 P.2d 445, 448.

Turning to the next listed ground of error, we find no adequate recitation of facts upon which the criticism is based and no persuasive or cogent argument presented as support. There is instead a mere charge of delay on the part of the defendant and a reference to encyclopedic authority saying that where delay is attributable in part to defendant he cannot recover. We find this entirely unconvincing.

In contrast to these two nugatory charges of error, plaintiff's criticism of the verdict and judgment as unsupported by sufficient proof of damages has merit. The censure on this aspect is broad, embracing numerous factors, including an asserted impropriety of using Fornstrom's land for comparison purposes without allowance for difference in conditions; the failure to consider as deductible the rea-

2. Owners of two farms adjoining the Anderson land also wished to install sprinkler systems, and it was orally agreed there would be a substantial discount if there was a "package deal" on the systems, and contracts concerning these were also entered into.

sonable costs of harvesting, transporting, and marketing the beet tonnage claimed not to have been produced by reason of the delay in the installation of the sprinkler system, the claim that plaintiff could not be held for consequential damages in any event, and the lack of proof that any lessening of yield resulted from the late installation as opposed to other causes, including a June frost. Underlying all these was the question, Did the "sprinkler system" include the irrigation pipe? Defendant insists that it did and accordingly that the handwritten provision in the contract "to be installed prior to April 1, 1969" applied, while the plaintiff considered the pipeline as a separate matter, saying if defendant had wished to have the pipeline installed by a certain date he should have requested that date be inserted in the pipeline contract.

 We think the question was not only central but crucial and it was answered by the penultimate sentence of Instruction No. 8, to which no objection was interposed by defendant:

"The measure of damage is the difference between the market value of the crop before the alleged damage was done and the market value of the crop after the alleged damage was done. This may be calculated by finding the market value the entire crop would have at maturity if no injury thereto had been done, and deducting therefrom the entire market value of the crop at maturity in its alleged injured state. The difference, if any, will enable you to calculate the amount of damage. In determining the market value which the crop would have brought at maturity you may consider the average yield per acre of similar land in the neighborhood. *From this amount so found, if you so find, you must also deduct the amount of damage, if any, caused by the inability to irrigate the sugar beets between the time the sprinkler system was installed and the pipeline was installed.* Finally, you must determine what would have been the cost of harvesting, marketing and transporting that portion of the crop which was lost and deduct this amount." (Emphasis supplied.)

By the noted sentence in the instruction, the court made clear beyond question that it considered the contract for the sprinkler system and the one for the pipeline as separate and distinct. Whether or not that ruling was correct is not within our province at this time to determine since it is the universal rule that an instruction given to the jury without objection becomes the law of the case and is not open to review by an appellate court. DeWitty v. Decker, Wyo., 383 P.2d 734, 738; Perkins v. Vermont Hydro-Electric Corporation, 106 Vt. 367, 177 A. 631, 654; 5 C.J.S. Appeal and Error § 1464(6); 88 C.J.S. Trial § 425.

There was no contention by Anderson that the claimed damage to his beets was caused by the lateness of the erection of the sprinklers. He testified that he could not remember that date but said, the sprinkler system "was up in time, the pipeline was the big delay, this was what caused our difficulties because we spent three weeks putting the pipeline in." There was additional testimony to the same general effect.

Since under Instruction No. 8 there could be no recovery for damage caused by the late installation of the pipeline and under this testimony there was no damage occasioned by delayed installation of the sprinkler system, the jury obviously misunderstood, misapprehended, or ignored the court's instruction. Accordingly, the verdict as to the counterclaim was improper and that portion of the judgment awarding defendant damages must be reversed.

Reversed in part.