VOIGT, Chief Justice.
 

 [T1] Dr. Shelly Shepard ("the appellant") appeals a judgment and order of the district court finding that Dr. David Beck ("the ap-pellee") did not breach an employment agreement with the professional corporation formed between the appellant and the appel-lee, Associates in Obstetrics/Gynecology, P.C. ("the corporation"), and ordering the corporation to dissolve. We affirm in part and reverse in part.
 

 ISSUES
 

 [T2] 1. Did the district court err when it concluded that the appellee did not breach his employment contract?
 

 2. Did the district court err when it split the costs of an accounting audit between the parties instead of placing liability for the costs of the audit on the appellee?
 

 8. Did the district court err when it declined to award attorney's fees to the appellant?
 

 4. Did the district court err in its order regarding the division of corporate equipment between the parties?
 

 FACTS
 

 [T3] The appellant and the appellee, who practice obstetrics and gynecology, formed a corporation as equal shareholders in 2002. At that time, they also each entered into employment agreements with the corporation as its employees. Problems soon arose regarding the bookkeeping for the corporation. The appellee insisted that his mother, Carol Beck, handle the bookkeeping, though apparently she was not trained or experienced in such work. The appellant, meanwhile, preferred that a professional billing service manage the books. The parties ultimately agreed that Carol Beck would handle the appellee's bookkeeping while a professional service would keep the appellant's books. The parties amicably coexisted in this fashion until they decided that the corporation would employ a third doctor.
 

 [14] Dr. Marshall was scheduled to begin working for the corporation in August 2008. Initially, the parties agreed that the appellant's billing firm would handle Dr. Marshall's billing; however, the appellee subsequently changed his mind and insisted that Carol Beck handle the billing. The parties finally agreed to resolve the dispute by allowing an outside auditing firm, Eide Bailly, to
 
 *989
 
 audit 100 charts billed by Carol Beck. The agreement provided that if Eide Bailly determined that her "billing was appropriate," then she could handle Dr. Marshall's billing, but if not, then Dr. Marshall's billing would be outsourced like the appellant's.
 

 [15] When Eide Bailly performed its audit in July 2003, it found errors in a large majority of the charts selected for review.
 
 [1]
 
 The appellee, however, insisted that Dr. Marshall utilize Carol Beck for his billing, contrary to his agreement with the appellant. Ultimately, in July or August 20083, the ap-pellee communicated to the appellant his desire to dissolve their practice and the parties began negotiating to effectuate such dissolution.
 

 [16] Subsequently, in the fall of 2008, problems arose at Campbell County Memorial Hospital regarding the on-call schedules of the appellant, the appellee, and Dr. Marshall. It appears that the staff at the hospital was given conflicting directions by the parties regarding whom to call when one of the doctors' patients was admitted to the hospital. Despite a promise to "work it out," the appellee and Dr. Marshall unilaterally decided that the appellant would be solely responsible for her own patients, effectively requiring the appellant to stay on-call 24 hours a day.
 

 [17] Finally, on January 1, 2004, the ap-pellee informed the appellant that he had moved his practice out of the building that they previously cecupied and he had taken with him such items as were necessary for his new practice. The appellant filed the instant action on January 2, 2004. The ap-pellee filed his answer and counterclaim on March 29, 2005. In April 2004, the appellant hired the Wipfli accounting firm to conduct an audit of the corporation as part of the litigation. After a bench trial, the district court made findings of fact and conclusions of law, ultimately deciding: (1) that the appellee did not breach his employment contract; (2) that the appellee should not be enjoined from relocating his practice; (8) that the appellant was entitled to an accounting, but that the cost of the Wipfli audit should be considered a cost of winding up the corporation and, therefore, be shared equally between the parties; and (4) that the corporation should be dissolved and each party allowed to keep the assets currently in his or her possession.
 
 [2]
 
 This appeal followed.
 

 DISCUSSION
 

 Whether the district court erred when it concluded that the appellee did not breach his employment contract.
 

 [18]: The appellant argues that the district court's findings of fact are inconsistent with its ultimate finding that the appellee did not breach the employment contract. She contends that the following factual findings regarding the appellee's conduct warrant the conclusion that the contract was breached:
 

 1. Reneging on the verbal agreement to have the new physician billed by an outside party if the Eide Bailey [sic] audit showed problems with his mother's billing. Even after re-auditing the files and complaining that the audit was not random, there were still problems found in the [appellee's] mother's billing. The audit seemed random enough for the court and sufficiently appropriate to discover if there were billing problems....
 

 2. Decision letter to the chief of staff on the "call" problem. This was not discussed in advance with the [appellant] and only communicated to the [appellant] by the recipient of the letter. This is hardly the mark of a 50 - 50 partnership or professional corporation.
 

 
 *990
 
 3. [Appellee] decided to end the parties' practice together by moving out without notice. This also seems to have been made while leading the [appellant] to believe that they were very near a final settlement on their dissolution discussions.
 

 4. When the [appellee] moved out, he decided what equipment he would take. Of course his letter says that he would be taking with him "such equipment, supplies and inventory as will be necessary to continue" his practice. He would "leave items ... to enable [appellant] to continue (to) practice as well."
 

 The district court further determined that the appellee "violated the duty of a director to the corporation and to its other director and employee." The appellee responds that the appellant was not a party to his employment contract with the corporation and, therefore, she could not enforce it. At oral argument, he alternatively argued that the appellant did not suffer damages resulting from any breach so the district court's decision was not erroneous.
 

 [T9] Our oft-stated standard for reviewing a district court's findings of fact and conclusions of law is as follows:
 

 "The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
 

 Forshee v. Delaney, 2005 WY 103, ¶6, 118 P.3d 445, 448 (Wyo.2005) (quoting Springer v. Blue Cross & Blue Shield, 944 P.2d 1173, 1175-76 (Wyo.1997)). Of course, we review conclusions of law de novo. E. Broadway Assocs. v. Dowell, 2002 WY 106, ¶17, 49 P.3d 1004, 1007-08 (Wyo.2002).
 

 [110] Though the appellant's reply brief argues that she is entitled to third-party beneficiary status to enforce the appel-lee's contract, we need not consider that issue because, based on our review of the record, the appellee's claim that the appellant is not a proper party is raised for the first time on appeal. W.R.C.P. 17 provides, in pertinent part:
 

 (a) Real party in interest-Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
 

 In Gifford-Hill-Western, Inc. v. Anderson, 496 P.2d 501, 502 (Wyo.1972), we said that a party's failure to object that its opponent was not the real party in interest until the close of the evidence "constituted a waiver of any objection on that ground." In the instant case, the failure to object to the appellant's status as the real party in interest is even more egregious than in Gifford-Hill-West-ern because, as the record exists on appeal, the first time this issue was raised is in the instant appeal and it was, therefore, waived by the appellee. Further, the appellee filed a counterclaim below alleging that the appellant was liable to him for "any amounts due the corporation which were improperly billed" by the appellant. Judicial estoppel is
 

 sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one eannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings, as here. 31 C.J.S. Estoppel § 117, pp. 624-625.
 

 Wilson v. Lucerne Canal & Power Co., 2007 WY 10, ¶26, 150 P.3d 653, 663 (Wyo.2007). Because the appellee individually sought a
 
 *991
 
 judgment from the appellant based on her status as an employee of the corporation below, he must now be estopped from claiming that the appellant is not a proper party to recover for any breaches of his similar employment contract.
 
 [3]
 

 [111] The appellee has not challenged the above-mentioned factual findings of the district court on appeal and those findings clearly indicate that the appellee's actions violated his employment contract. That contract contained the following relevant provisions:
 

 1. Employment. ... The [appellee] shall devote his full professional time and effort to the performance of service for the [corporation], which shall include but not be limited to the practice of the medical specialty of Obstetrics & Gynecology, and solely as an Employee of the [corporation]. The duties shall include, but not be limited to, keeping and maintaining, or causing to be kept and maintained, appropriate records relating to professional services rendered by him under this Agreement and preparing and tending to, in connection with such services, all reports, claims, and correspondence necessary and appropriate in the cireumstances, all of which records, reports, claims, and correspondence shall belong to the [corporation].
 

 [[Image here]]
 

 3. Hours of Employment and Patient Care. The [corporation] and the [appellee] shall determine a work schedule which is mutually agreeable between the Parties, taking into consideration the needs of the patients and the "call schedule" between all physicians employed by the [corporation].
 

 [112] The district court's findings indicate that the appellee was not ensuring that accurate records were being created and maintained by Carol Beck, that the appellee unilaterally altered the call schedule with the hospital to the appellant's detriment, and that he removed corporate assets and began practicing medicine in competition with the corporation. The district court further found that the appellee had violated duties to the corporation and to the appellant. These specific findings clearly constitute a breach of the express terms of his employment contract and are, therefore, inconsistent with the district court's general finding that the appel-lee did not breach the contract. Long ago, we recognized that specific findings control when they conflict with a general finding. School Dist. v. Wempen, 80 Wyo. 311, 342 P.2d 232, 235 (1959); Parker v. Meadows, 20 Wyo. 183, 122 P. 586, 588 (1912). Therefore, we are forced to conclude that the appellee did, in fact, breach the above-mentioned provisions of his employment contract and the district court's ruling in the appellee's favor on the breach of contract claim was clearly erroneous.
 

 Whether the district court erred when it split the cost of the Wipfli audit between the appellant and the appellee.
 

 [113] Having determined that the appellee breached his employment contract, we now turn to what costs the appellant may recover in the instant case. The appellant first claims that the district court's order that the parties split the cost of the Wipfli audit was an abuse of discretion because it based that decision on a factual finding that "the accounting performed by Wipfli is a reasonable accounting necessitated by the violations of duty by the [appellee]." The appellant argues that, in light of the attorney's fees and costs provision in the corporate contract, she was entitled to recover the full cost of the accounting. The corporate agreement created by the appellant and the appel-lee states:
 

 
 *992
 
 14. Attorneys Fees And Costs. In the event suit is brought to enforce the terms of this Agreement, the prevailing party shall be entitled to recover all attorneys fees and costs incurred relating to the enforcement of this Agreement.
 

 [T14] We review awards of costs and attorney's fees in order to determine if the district court abused its discretion. Snyder v. Lovercheck, 992 P.2d 1079, 1084 (Wyo.1999).
 

 "A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the cireumstances." "The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did."
 

 Id. (quoting Johnston v. Stephenson, 938 P.2d 861, 862 (Wyo.1997)).
 

 [115] The cases cited by the appellant in her argument demonstrate the point that an accounting may be considered part of the costs of litigation and, therefore, be awarded to the prevailing party. See Lasich v. Wimpenney, 73 Wyo. 345, 278 P.2d 807, 813 (1955); Sauceda v. Kerlin, 164 SW.3d 892, 927 (Tex.App.2005); Andrikopoulos v. Broadmoor Mgmt. Co., 670 P.2d 435, 440 (Colo.App.1983); and Johnson v. Taylor, 116 So.2d 480, 481-82 (Fla.Dist.Ct.App.1959). The touchstone of those cases, however, is not that an accounting must be taxed as a cost, but that it is an equitable remedy and, therefore, within the trial court's broad discretion to treat it as a cost of litigation, if warranted. In the instant case, the district court determined that, while the appellee's actions precipitated the need for the accounting, it was more properly considered necessary to the mutually beneficial winding up of corporate affairs and not a cost incurred in enforcement of the corporate agreement. We do not find that the district court abused its discretion in this regard. Wyo. Stat. Ann. § 1-14-126(a) (LexisNexis 2005) states that "the court may award and tax costs and apportion them between the parties on the same or adverse sides as it deems right and equitable." While the district court stated that the need for the audit was precipitated by the appellee's breaches of his duty to the corporation, it also noted in its decision letter that the appellant had obtained a separate business phone number and deposited business receipts in a separate bank account for "about a month." The district court further determined that this litigation became more difficult and complex because of a lack of communication and cooperation from both parties. Under these circumstances it was within the district court's broad discretionary power to find that the accounting was necessary in order to wind up the corporation's business and that the appellant was not entitled to be reimbursed for the full cost of the audit. In coming to this conclusion, we note that the district court granted the appellant her other costs as the prevailing party below.
 

 Whether the district court erred when it declined to award the appellant her attorney's fees.
 

 The appellant next claims that she is entitled to attorney's fees under the fee shifting provision in the appellee's contract. The attorney's fee provision in the appellee's employment contract reads:
 

 13. Costs and Attorneys Fees. In the event suit is brought or an attorney is retained to enforce the terms of this Agreement, the prevailing party shall be entitled to recover all reasonable attorney's fees, costs, costs of investigation and other expenses incurred in connection therewith.
 

 The appellee again responds that the appellant is not entitled to enforce the contract, therefore, each party was properly required to pay its own fees.
 

 [117] As discussed more fully above, the appellee waived his right to object that the appellant is not a proper party to enforce his employment contract by not raising the defense below. See Gifford-Hill-Western, 496 P.2d at 502. Therefore, as the prevailing party on the breach of contract claim, the appellant may collect her attorney's fees as provided for by the contract. That fact is not, however, fully dispositive of this issue. The district court order in the instant case merely said that each party
 
 *993
 
 should pay his or her own attorney fees. It did not specify whether it did so under the default "American Rule" regarding attorney's fees,
 
 [4]
 
 or whether it recognized that appellant was entitled to fees under the contract, but determined under its equitable powers that each party should pay his or her own.
 
 [5]
 
 On remand, the district court is instructed that the appellant is contractually entitled to attorney fees, but such may be adjusted as appropriate under the federal lodestar test. "The two factors which are examined under the lodestar test are: '(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward." " Cline, 998 P.2d at 951 (quoting Johnston v. Stephenson, 938 P.2d 861, 862-62 (Wyo.1997)).
 

 Whether the district court erred in its division of corporate equipment.
 

 [118] The 'appellant summarizes her final argument as follows:
 

 Given such a variance in the testlmony of the parties as to the amount and kind of property which they received, the trial court's finding No. 10 amounts to a non-finding. The matter should be reversed for further findings in this regard.
 

 The finding to which the appellant refers reads:
 

 10. For claim 4, the court will order the final winding-up of this corporation with each party taking the property that each has in their own possession at the value established by the appraisal by Kelly Kel-lebrew. The only exception will be the phone system which from the evidence presented will be considered as part of the building.
 

 A list of how the property was divided is contained in the record, as is the appraisal by Kelly Kellebrew which values the equipment owned by the corporation at nearly $45,000.
 

 [119] The appellant's argument does not allege any dispute with the nature of the property taken by the appellee. Instead, she disagrees with the value attached to that property by the district court. On factual issues, we affirm the findings of the district court unless they are clearly erroneous. Forshee, 2005 WY 103, ¶6, 118 P.3d at 448. The appellant's mere disagreement with the value placed on the property by the district court is insufficient for us to find that the district court clearly erred. The value of the property found by the district court is supported by the Kelly Kellebrew appraisal and we will, therefore, affirm the distribution of corporate assets ordered by the district court.
 

 CONCLUSION
 

 [120] While the appellee may have breached his employment contract with the corporation, the district court did not abuse its discretion when it ordered the parties to split the cost of the Wipfli audit evenly between them as part of the dissolution process. Further, the appellant has failed to show error in the division of the corporate property. The district court should, however, have ordered the appellee to pay the appellant's reasonable attorney's fees due to
 
 *994
 
 his breach of the contract. We, therefore, affirm in part, reverse in part, and remand for entry of an order finding the appellee in breach and awarding the appellant reasonable attorney's fees.
 

 [1]
 

 . The agreement between the appellant and the appellee provided that the charts would be randomly selected; however, a great deal of testimony focused on the procedure used to select the charts and indicated that they might not actually have been randomly chosen. Regardless of the method used to select the charts, neither party disputes that Eide Bailly found a large number of errors therein.
 

 [2]
 

 . The district court noted that each party was entitled to the property currently in his or her possession "at the value established by Kelly Killebrew in his October 2003 appraisal." As we will discuss below, the appellant argues that this division of corporate property left "considerable confusion as to what property went with which party, and at what value."
 

 [3]
 

 . Interestingly, the appellant argues that the ap-pellee raised the issue below but the district court did not find the defense persuasive because the appellant was a third-party beneficiary to the contract. If this is the case, however, the appel-lee did not designate his argument below for transmission to this Court on appeal. See W.R.A.P. 3.05(c) (Supp.2006). In any event, the appellee's defense on appeal must fail because if it was not raised below, it cannot be raised for the first time here; and if it was raised below but decided adversely to the appellee, then the fact that he did not appeal that decision prevents us from revisiting it and also raises concerns with this Court that the appellee did not acknowledge that the argument he raises on appeal was rejected by the district court below.
 

 [4]
 

 . Wyoming subscribes to the American rule regarding recovery of attorneys' fees. Board of County Commissioners of County of Platte v. State ex rel. Yeadon, 971 P.2d 129, 132 (Wyo.1998). Under the American rule, each party is generally responsible for his own attorneys' fees. 971 P.2d at 132-33. A prevailing party may, however, be reimbursed for his attorneys' fees when express statutory or contractual authorization exists for such an award. Id. Cline v. Rocky Mountain, Inc., 998 P.2d 946, 949 (Wy0.2000).
 

 [5]
 

 . In Castleberry v. Phelan, 2004 WY 151, n. 2, 101 P.3d 460, 464 n. 2 (Wyo.2004), we noted that [olur holding in this case does not depart from prior cases in which we have stated that, {elven in the {ace of a valid contractual provision for attorney's fees ... a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable." Dewey [v. Wentland, 2002 WY 2], ¶50[, 38 P.3d 402, 420 (Wyo.2002) ]. The district court's decision indicates that its decision was based upon a legal conclusion that attorneys' fees were not available. There is nothing in the decision to indicate that it was denying Castleberry attorneys' fees on the basis of equity. Id.