# IN THE SUPREME COURT, STATE OF WYOMING

# 2014 WY 117

**APRIL TERM, A.D. 2014**

**September 18, 2014**

| | |
|---|---|
| NATHAN R. BAKER; BRYNER FARMS, LLC; PAT'S DREAM PROJECT TRUST; and MME TRUST, | |
| Petitioners, | |
| v. | S-13-0245 |
| DAVID SPEAKS and ELIZABETH SPEAKS, | |
| Respondents. | |
| NATHAN R. BAKER; BRYNER FARMS, LLC; PAT'S DREAM PROJECT TRUST; and MME TRUST, | |
| Appellants (Defendants), | |
| v. | S-13-0266 |
| DAVID SPEAKS and ELIZABETH SPEAKS, | |
| Appellees (Plaintiffs). | |

*Original Proceeding*
*Petition for Writ of Review – No. S-13-0245*
*Appeal from the District Court of Lincoln County – No. S-13-0266*
The Honorable Richard L. Lavery Judge

*Representing Petitioners/Appellants:*
David H. Day of Day Shell & Liljenquist, L.C., Murray Utah.

*Representing Respondents/Appellees:*
> Paula A. Fleck and Susan L. Combs of Holland & Hart LLP, Jackson, Wyoming. Argument by Ms. Fleck.

**Before BURKE, C.J., and HILL, KITE*, DAVIS, and FOX, JJ.**

***Chief Justice at time of oral argument.**

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]    This is the third appeal of matters related to Byron Baker's faulty construction of a cabin for David and Elizabeth Speaks.  *See Baker v. Speaks,* 2008 WY 20, 177 P.3d 803 (Wyo. 2008) (*Baker I*) and *Baker v. Speaks,* 2013 WY 24, 295 P.3d 847 (Wyo. 2013) (*Baker II*).  The current dispute concerns the availability of two properties for execution to satisfy the Speaks' judgment against Byron.  The two properties were fraudulently transferred by Byron and Rosemary Baker to their son, Nathan R. Baker, and then later transferred to Bryner Farms, LLC, Pat's Dream Project Trust and MME Trust (collectively referred to as "the Baker Defendants").  The district court ruled the undisputed facts established that Rosemary and Byron were not married when they took title to the Corsi Ranchettes lot as tenants by the entirety.  Consequently, Byron's interest was not entitled to protection from legal process.  The district court also concluded the Speaks brought the action to declare the Misty Meadows lot transaction fraudulent within the applicable limitations period.

[¶2]    We affirm.

## ISSUES

[¶3]    The Baker Defendants present the following issues in this consolidated appeal:

> 1. Whether the district court erred in holding that it had no jurisdiction to adjudicate the marital status of Byron and Rosemary Baker, and that the legal effect of its lack of jurisdiction was that the Corsi Ranchettes Property was not held by the Bakers as tenants by the entireties.
>
> 2. Whether the district court erred in granting summary judgment on the basis that the applicable statute of limitations for a cause of action under the Uniform Fraudulent Conveyance Act does not expire until four years after the conveyance alleged to be fraudulent is actually discovered, and that it was Defendants' burden to prove the date of discovery.

The Speaks restate the issues as:

> 1. Did the district court properly grant summary judgment regarding the marital status of Byron and Rosemary Baker?

1

2. Did the district court properly determine that the Speaks'
claim regarding the Misty Meadows property was timely?

**FACTS**

[¶4] The factual and procedural histories of this matter are very complicated; consequently, we will distill the current controversies down to their essentials. The Corsi Ranchettes property was transferred by warranty deed to Byron and Rosemary Baker, husband and wife, as tenants by the entirety in 1998. In 2003, Byron and Rosemary conveyed the property to Nathan who then transferred it to Bryner Farms, LLC, a family-owned company, in 2008. Bryner Farms conveyed the Corsi Ranchettes property to Pat's Dream Project Trust in 2010. Rosemary was the trustee of the trust.

[¶5] In *Baker II,* ¶ 54, 295 P.3d at 860*,* we affirmed the district court's ruling that the 2003 transfer from Byron and Rosemary to Nathan was fraudulent under the Uniform Fraudulent Conveyances Act, Wyo. Stat. Ann. §§ 34-14-101 through 34-14-113 (LexisNexis 2003) (UFCA). The Baker Defendants asserted the property was, nevertheless, exempt from execution for the judgment against Byron, alone, because it was held by Byron and Rosemary as tenants by the entirety. Because the record was unclear as to Byron and Rosemary's marital status, we remanded for a determination. *Id.,* ¶¶ 57-59, 62, 295 P.3d at 860-62.

[¶6] Back in district court, the Speaks moved for summary judgment claiming the undisputed evidence established Rosemary and Byron were not married. The Baker Defendants acknowledged they were not formally married when they took title to the Corsi Ranchettes property, but requested the court to enter an order establishing their marriage under Utah's unsolemnnized marriage statute. The district court ruled it could not change Byron's and Rosemary's marital status because they were not parties to the action. Without an adjudication of marriage under the Utah statute, the evidence established the Bakers were not married when they took title to the Corsi Ranchettes property as tenants by the entirety. The district court, therefore, granted summary judgment in favor of the Speaks apparently concluding the property was not held in a valid tenancy by the entirety because the Bakers were not married when they took title to it. The only issue remaining with regard to the Corsi Ranchettes lot after the district court's summary judgment decision was "whether Nathan Baker acted with actual fraudulent intent at the time of the 2003 transfer of the Corsi Ranchettes property, and if not, whether he gave $14,000 consideration for the fraudulent conveyance." The Baker Defendants filed a petition for a writ of review of the district court's decision that Byron and Rosemary were not married and we conditionally granted it.

[¶7] The Misty Meadows property presented a different issue. Rosemary and Byron took title to that property as "Joint Tenants with full rights of survivorship, and not as

2

tenants in common." Rosemary and Byron fraudulently conveyed their interest in the Misty Meadows lot to Nathan on October 1, 2003. Nathan conveyed the property to Bryner Farms in 2008, and Bryner Farms transferred it to the MME Trust in 2010. Rosemary was also the trustee of the MME Trust.

[¶8] The Bakers asserted the Speaks did not file their action to set aside the fraudulent transfer of the Misty Meadow property within the limitations period set forth in the Uniform Fraudulent Transfers Act, Wyo. Stat. Ann. § 34-14-210(a) (UFTA) and that claim was, therefore barred. Consistent with our holding in *Baker II,* the district court held the statute of limitations applicable to the UFCA, and not the UFTA, applied and the Speaks' claim was timely under that provision. Consequently, the district court found the Speaks were entitled to execute on Byron's interest in the Misty Meadows lot and entered a partial final judgment under W.R.C.P. 54(b). The Baker Defendants appealed that decision.

## STANDARD OF REVIEW

[¶9] Summary judgments are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a summary judgment *de novo*, using the same materials and following the same standards as the district court. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Hasvold v. Park County School Dist. No. 6,* 2002 WY 65, ¶ 11, 45 P.3d 635, 637-38 (Wyo. 2002), quoting *Four Nine Gold, Inc. v. 71 Constr., Inc.,* 809 P.2d 236, 238 (Wyo. 1991) and *Unicorn Drilling, Inc. v. Heart Mountain Irrigation Dist.,* 3 P.3d 857, 860 (Wyo. 2000). *See also Alpine Lumber Co. v. Capital West Nat'l Bank,* 2010 WY 62, ¶ 5, 231 P.3d 869, 870-71 (Wyo. 2010).

[¶10] We have described the respective obligations of summary judgment opponents in this way:

> "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for

3

summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:

> After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.

*Hatton v. Energy Electric Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 12-13 (Wyo. 2006) (citations omitted). *See also Fayard v. Design Committee of the Homestead Subdivision,* 2010 WY 51, ¶ 21, 230 P.3d 299, 305 (Wyo. 2010). We can affirm a summary judgment ruling on any legal ground appearing in the record. *Retz v. Siebrandt,* 2008 WY 44, ¶ 14, 181 P.3d 84, 90 (Wyo. 2008).

## DISCUSSION

### 1. *Rule 54(b) Certification*

[¶11] After the district court certified its decision on the Misty Meadow lot as final under W.R.C.P. 54(b), the Baker Defendants filed a notice of appeal on that claim. At the same time, the Baker Defendants filed a petition for writ of review of the district court's decision on the Corsi Ranchettes lot. We issued the writ on a conditional basis, subject to our later evaluation of the propriety of the Rule 54(b) certification.

[¶12] Although neither party challenged the district court's decision to certify the Misty Meadows decision as final under Rule 54(b), we may raise the issue on our own. *See, e.g., Griffin v. Bethesda Foundation,* 609 P.2d 459, 460-61 (Wyo. 1980). Rule 54(b) states:

> (b) *Judgment Upon Multiple Claims or Involving Multiple Parties*. – When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an

4

express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Certification under Rule 54(b) involves a multiple-step query.

First, the district court must determine that Rule 54(b) applies, i.e., *are there multiple claims or multiple parties as contemplated by Rule 54(b)*? The answer to this threshold question is by nature one of law and this court gives no special deference to the determination made by the district court.

Once this question has been answered affirmatively, the district court must move on to the second determination, i.e., *is there no just reason for delay*? This determination is reviewable only for an abuse of discretion. This is so because such a decision is more in the nature of a factual determination. The district court is called upon to weigh a variety of factors and factual circumstances in reaching its decision.

*Griffin,* 609 P.2d at 461 (citations omitted) (emphasis in original).

[¶13] In *Griffin, supra,* we concluded the Rule 54(b) certification requirements were not satisfied. The elderly plaintiffs in that case presented two causes of action in contract and two causes of action in tort against the nursing home that had agreed to care for them for the remainder of their lives. *Id.* at 460. The district court granted summary judgment in favor of the nursing home on the two tort claims and entered a Rule 54(b) certification. *Id*. We held the Rule 54(b) certification was improper because the action did not present multiple claims. All four claims were linked to the contract between the parties and dependent on essentially the same facts; consequently, we concluded the issues were inseparable and dismissed the appeal. *Id.* at 461.

[¶14] The case at bar is different. The Speaks are attempting to collect their judgment by executing against two separate properties in which Byron previously had an interest.

5

Some of the facts about the transfers of both properties are the same, i.e., Rosemary and Byron conveyed their interests in both lots to Nathan on October 1, 2003, and on February 27, 2008, Nathan transferred both lots to Bryner Farms, LLC. However, the legal issues regarding each of the lots are distinct. Rosemary and Byron owned the Corsi Ranchettes lot as tenants by the entirety and the outstanding legal issues pertain to the validity of that tenancy and whether Nathan has any continuing interest in the property. In particular, the district court's decision did not resolve whether Nathan "acted with actual fraudulent intent at the time of the 2003 transfer of the Corsi Ranchettes property, and if not, whether he gave $14,000 consideration for the fraudulent conveyance." On the other hand, Rosemary and Byron owned the Misty Meadows property as joint tenants with right of survivorship and the unresolved legal issue for that lot is whether the statute of limitations had expired before the Speaks brought their claim to declare the transfer fraudulent. Although Nathan is in the chain of title to the Misty Meadows property, there is no claim that he has any potential continuing interest after the transfers were declared fraudulent. These distinctions clearly demonstrate there are multiple claims involved.

[¶15]     The question of whether, under Rule 54(b), there has been a proper disposition of claims involving multiple parties can also present some difficulty. 10 Fed. Prac. and Proc. Civ. § 2656 explains:

> If there are multiple parties, there need only be one claim in the action. **Of course, all of the rights or liabilities of one or more of the parties regarding that claim must have been fully adjudicated**. A decision that leaves a portion of the claim pending as to all defendants does not fall within the ambit of Rule 54(b)

(emphasis added). In *Mott v. England,* 604 P.2d 560, 563 (Wyo. 1979), we stated:

> [A Rule 54(b) certification] "cannot be employed to permit the appeal of a [p]artial adjudication of the rights of one or more of the parties[.] [O]nly a [c]omplete disposition of the claim relating to [a]t least one of the parties may be certified." 10 Wright & Miller, Federal Practice and Procedure: Civil s 2653, p. 27 (1973). . . . The rationale for such holding is to protect the policy against piecemeal appeals. See Wright & Miller, supra, s 2658, p. 68 and s 2659, pp. 75-79.

Pat's Dream Project Trust has record title to the Corsi Ranchettes lot, and MME Trust has record title to the Misty Meadows lot. The district court's decisions completely resolved the trusts' outstanding claims in both properties and all issues regarding the Misty Meadows lot. The only outstanding issue in the entire case is whether Nathan Baker has

6

any interest in the Corsi Ranchettes lot which was subject to protection. Consequently, the Rule 54(b) certification requirement of multiple claims and/or multiple parties was satisfied.

[¶16] The district court also expressly found there was no just reason for delay and the Speaks were entitled to execute on Byron's interest in the Misty Meadows lot. *See Mott*, 604 P.2d at 563 (Rule 54(b) requires an express determination there is no just reason for delay). The district court did not abuse its discretion in making that decision. The statute of limitations was the only issue remaining as to the Misty Meadows lot, and the district court ruled the period had not expired when the Speaks commenced their action. Like the district court, we do not perceive of any reason why the execution action should not proceed against Byron's interest in the Misty Meadows property while the remaining issues regarding the Corsi Ranchettes lot are being considered. The Rule 54(b) certification of the Misty Meadows claim was appropriate, as was our decision to, in the interest of judicial efficiency, grant the writ of review on the decision regarding the Corsi Ranchettes lot.

## 2. *Rosemary's and Byron's Marital Status*

[¶17] The Baker Defendants claim Byron's interest in the Corsi Ranchettes lot is not subject to execution because it was held in a tenancy by the entirety with Rosemary. "[P]roperty held in tenancy by the entirety is generally not subject to legal process to satisfy a debt of only one spouse." *Estate of Marusich v. State ex. rel Dep't of Health*, 2013 WY 150, ¶ 18, 313 P.3d 1272, 1279 (Wyo. 2013). *See also Baker II*, ¶ 48, 295 P.3d at 858. Since Rosemary was not a judgment debtor, the Speaks would not be allowed to execute against any property held by Byron and Rosemary in a valid tenancy by the entirety.

[¶18] In order to hold a legal tenancy by the entirety, the parties must be married. *Baker II*, ¶ 47, 295 P.3d at 858. In the construction litigation, Rosemary and Byron stated, and the district court found, they were not formally married. However, in this case, they sought a ruling that they were married under Utah's unsolemnized marriage statute. That statute stated:

> (1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between a man and a woman who:
>
> (a) are of legal age and capable of giving consent;
>
> (b) are legally capable of entering a solemnized marriage under the provisions of this chapter;

7

(c) have cohabited;

(d) mutually assume marital rights, duties, and obligations; and

(e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.

(2) The determination or establishment of a marriage under this section shall occur during the relationship described in Subsection (1), or within one year following the termination of that relationship. Evidence of a marriage recognizable under this section may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.

U.C.A. § 30-1-4.5. A declaration of marriage under the statute relates back to the date the parties entered into the relationship. *Kelley v. Kelley*, 9 P.3d 171, 180 (Utah Ct. App. 2000); *Whyte v. Blair*, 885 P.2d 793-94 (Utah 1994). However, Utah courts have stated that a private pledge between the parties does not have legal status as a marriage unless it is adjudicated. *State v. Holm*, 137 P.3d 726, 743 (Utah 2006).

[¶19] The district court concluded it did not have jurisdiction to declare Rosemary and Byron were married under Utah's unsolemnized marriage statute because neither of them was a party to this action. The Baker Defendants argue that a court does not need to have jurisdiction over a person to make a finding of fact about that person.[1] They cite the Restatement (Second) of Judgments § 7, cmt. a. (1982, updated 2014):

Jurisdiction to establish or terminate a status should be distinguished from jurisdiction to determine the existence of a status as an incidental question in litigation whose primary objective is resolution of some other controversy. A court may have territorial jurisdiction over an action in which a

---

[1] The Speaks assert the Baker Defendants do not have standing to appeal the district court's ruling that it could not declare Rosemary and Byron were married because it did not have personal jurisdiction over them. Standing is a legal issue that affects a court's jurisdiction and may be raised at any time. *Northern Laramie Range Foundation v. Converse County Bd. of County Comm'rs,* 2012 WY 158, ¶ 22, 290 P.3d 1063, 1073 (Wyo. 2012). A party has standing if it has a personal stake in the outcome of the case. *Id.,* ¶ 23, 290 P.3d at 1073. In this case, the Baker Defendants obviously have a personal stake in the outcome of the case as they are the record owners of the properties, and a finding that Rosemary and Byron were married would insulate Byron's former interest in the Corsi Ranchettes lot from execution. We conclude, therefore, that the Baker Defendants have standing to challenge the district court's ruling on appeal.

8

question of status is thus incidentally determined without having jurisdiction to entertain a proceeding whose purpose is the determination of the status.

(citations omitted). The Restatement provision actually supports the district court's decision. The Baker Defendants were not asking the district court to make a simple factual finding that Rosemary and Byron were married; they were asking it to establish a marriage where none had existed before.

[¶20] As a general matter, the rights of non-parties should not be determined without their presence. *See Koch v. J & J Ranch, LLC,* 2013 WY 51, ¶ 32, 299 P.3d 689, 695-96 (Wyo. 2013). The Baker Defendants do not direct us to any Utah cases where the court or administrative order under the unsolemnized marriage act was entered by a non-Utah court without the purported spouses being involved. In our research we have discovered Utah cases where third parties initiated or were involved in unsolemnized marriage declaration matters, but not without the couple somehow being involved. For example, in *State v. Green,* 99 P.3d 820, 823 (Utah 2004), the State of Utah brought an action to validate an unsolemnized marriage between Thomas Green and Linda Kunz in a criminal action against Green for bigamy. Green was obviously involved in the marriage determination because he was the criminal defendant and Linda Kunz was allowed to intervene. *Id.*

[¶21] If there were a pre-existing court or administrative order declaring the Bakers married under Utah law, the Wyoming district court could have recognized their marital status consistent with our precedent and the Restatement provision cited above. *See, e.g.*, *Christiansen v. Christiansen,* 2011 WY 90, ¶ 10, 253 P.3d 153, 156 (Wyo. 2011); *Jim's Water Service v. Eayrs,* 590 P.2d 1346, 1350 (Wyo. 1979), overruled on other grounds, *Loomer v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2004 WY 47, ¶ 18, 88 P.3d 1036, 1042 (Wyo. 2004). In *Baker II,* ¶ 49, 295 P.3d at 859, we stated: "Wyoming does not recognize common law marriage, but it does honor common law marriages concluded elsewhere, at least for certain purposes." In other words, we would honor a Utah unsolemnized marriage if it had been previously declared in an appropriate action with the proper parties. In this case, the Baker Defendants are asking the Wyoming judiciary to enter a court order that would change Rosemary's and Byron's marital status without them being before the court or personally involved in that adjudication. We are not willing to take that step.[2]

---

[2] The Baker Defendants assert that, if Rosemary's and Byron's presence is required to adjudicate the marriage issue, they should be joined as indispensable parties under W.R.C.P. 19. However, the Baker Defendants do not direct us to a motion to join indispensible parties or other request for joinder in the district court. Moreover, as our discussion has made clear, this is not simply a matter of indispensible parties being absent from a case. It is a request by parties outside of the marital relationship to declare a relationship exists without the purported spouses being present and making that request. Under these circumstances not only are the parties incorrect, the claim has not been properly presented. Such an

9

[¶22] The Baker Defendants claim it is appropriate for us to declare Rosemary and Byron married for the purposes of this litigation, without making the ruling binding upon them. If we were to accept that invitation, we would be creating a potential for inconsistent decisions. *See generally Worman v. Carver,* 2002 WY 59, ¶ 13, 44 P.3d 82, 86 (Wyo. 2002) (discussing the purposes of preclusion doctrines, which include preventing multiple lawsuits with inconsistent results). In fact, a declaration that Rosemary and Byron Baker were married would contradict an earlier ruling by the district court in the construction case, *Baker I.* Rosemary and Byron were actually involved in that case, and the district court determined that they were not married when the Speaks' contract was negotiated in 1999 or while construction was in progress in 1999 and 2000.

[¶23] In *Baker II,* ¶ 9, 295 P.3d at 850, we concluded it was unnecessary for the district court to make a finding as to Rosemary's and Byron's marital status in the construction action. Nevertheless, it is clear from the district court's decision letter in the construction action that the finding was based upon their representations and part of the context for its ruling that Rosemary was not Byron's partner in the construction business, thereby releasing her from liability for the faulty construction. Had a judgment been entered against her because she was found to be Bryon's business partner, the Corsi Ranchettes lot would have been subject to execution regardless of whether or not it was held in tenancy by the entirety. *Baker II,* ¶ 55, 295 P.3d at 860 (stating "[p]roperty held as tenants by the entireties is subject to execution by a creditor holding a judgment against both husband and wife").

[¶24] The evidence from the construction case indicates that Byron's attorney took care to point out that the parties were not married, and Byron certainly did not contest the finding on appeal in *Baker I.* However, in this case, it is beneficial to the Baker Defendants for Rosemary and Byron to be married, so that is their position. This is a classic example of why an express adjudication as to the existence of an unsolemnized marriage must be made in an action involving the purported spouses to avoid the circumstance where they (or others) assert they are married or not married at different times to promote their own interests.

[¶25] Given there is no administrative or court order adjudicating Byron and Rosemary married under Utah's unsolemnized marriage act and they were not formally married when they took title to the Corsi Ranchettes lot, the undisputed evidence established the Bakers were not married at the relevant time. Accordingly, they could not create a valid tenancy by the entirety. The district court properly granted summary judgment in favor of the Speaks on that issue.

---

action would be like a third party asking for a couple to be divorced in order to advance its legal claim. That clearly is not appropriate.

### 3. *Statute of Limitations*

[¶26] Rosemary and Byron fraudulently transferred the Corsi Ranchettes and Misty Meadows lots to their son, Nathan, on October 1, 2003, and the transfers were recorded on October 6, 2003. The district court entered judgment in favor of the Speaks and against Byron in the construction case on June 7, 2007. The Speaks obtained a title report in September 2007 (while the *Baker I* appeal was pending), showing the transfers.[3] We affirmed the judgment against Byron on February 22, 2008. *Baker I, supra.*

[¶27] The Speaks filed their initial fraudulent transfer complaint on March 4, 2008, seeking a declaration the Corsi Ranchettes lot was fraudulently transferred and should be subject to execution for Byron's debt. In their second amended complaint, filed on September 10, 2009, the Speaks asserted the transfer of the Misty Meadows lot was also fraudulent and that property should be subject to execution, as well. On September 21, 2009, the Baker Defendants moved to dismiss the second amended complaint claiming the statute of limitations under the UFTA had expired. The district court denied the motion to dismiss on June 3, 2010, but did not explain its reasoning.

[¶28] In *Baker II, ¶¶* 37-38, 295 P.3d at 856, we confirmed that the UFCA, rather than the UFTA, applied to the 2003 fraudulent transfers. Yet, on remand after *Baker II*, the Speaks continued to rely on the UFTA in support of their statute of limitations argument. In the order on appeal here, the district court noted the Baker Defendant's incorrect reliance on the UFTA statute of limitations:

> The [Baker] Defendants' statute of limitations argument is wrong on the merits. Their motion to dismiss the second amended complaint argues that the Plaintiffs discovered the 2003 fraudulent conveyance of the Misty Meadows property in September, 2007, when they ran a title report, but they didn't plead it until September 10, 2009, Second Amended Complaint, more than a year later. This argument relies on the statute of limitations under the UFTA. *See* Wyo. Stat. Ann. § 34-14-210(a)(i) (LexisNexis 2013). But the 2003 transfers are covered by the UFCA. Courts apply the general statute of limitations for fraud to the UFCA.

---

[3] There are suggestions in the record that the Speaks did not discover the Misty Meadows transfer until sometime later. See, *Baker II,* ¶ 15, 295 P.3d at 851. Under our standard of review, we "examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Hasvold,* ¶ 11, 45 P.3d at 637-38. We, therefore, give the Baker Defendants the benefit of the doubt and assume the Speaks actually discovered the transfer in September 2007, when they became aware of the Corsi Ranchettes lot transfer.

> Wyoming has a four year statute of limitations for fraud, which begins to run when the fraud is discovered. Thus, the claim for the 2003 fraudulent conveyance of the Misty Meadows property, which they pleaded two years after discovering it, was timely.

(some citations and footnote omitted).

[¶29] On appeal, the Baker Defendants do not assert that the district court erred as a matter of law by applying the UFCA rather than the UFTA. Instead, they argue for the first time that the Speaks' claim of fraudulent transfer of the Misty Meadows lot was not timely under the UFCA. The fact that the UFCA, rather than the UFTA, applies to this action should not have come as a surprise to the Baker Defendants because the relevant fraudulent transactions occurred in 2003 and the UFTA did not go into effect until 2006. In addition, we made it abundantly clear in *Baker II, supra,* that the UFCA governed this action. Given their argument about the UFCA was raised for the first time on appeal, we refuse to consider it. *See, e.g.*, *Shepard v. Beck,* 2007 WY 53, ¶ 10, 154 P.3d 982, 986 (Wyo. 2007); *Sundance Mountain Resort, Inc. v. Union Telephone Co.*, 2007 WY 11, ¶ 17, 150 P.3d 191, 196 (Wyo. 2007).

[¶30] Affirmed.