2015 WY 74

**RUBY RIVER CANYON RANCH, LTD, a Colorado Limited Partnership; and Western Conservation Partners I, LLC, a Colorado Limited Liability Company, Appellants (Plaintiffs),**

v.

**Dennis S. FLYNN, individually and as trustee, Nancy L. Flynn, individually and as trustee, the Dennis S. Flynn Revocable Trust under agreement dated April 2, 2009, Dennis S. Flynn, Trustee, the Nancy L. Flynn Revocable Trust under agreement dated April 2, 2009, Nancy L. Flynn, Trustee, William I. Kettlewell and Gayle A. Kettlewell, Appellees (Defendants).**

**Dennis S. Flynn, individually and as trustee, Nancy L. Flynn, individually and as trustee, the Dennis S. Flynn Revocable Trust under agreement dated April 2, 2009, Dennis S. Flynn, Trustee, the Nancy L. Flynn Revocable Trust under agreement dated April 2, 2009, Nancy L. Flynn, Trustee, William I. Kettlewell and Gayle A. Kettlewell, Appellants (Defendants),**

v.

**Ruby River Canyon Ranch, LTD, a Colorado Limited Partnership; and Western Conservation Partners I, LLC, a Colorado Limited Liability Company, Appellees (Plaintiffs).**

Nos. S–14–0215, S–14–0216.

Supreme Court of Wyoming.

May 21, 2015.

Representing Appellants, S–14–0215: Alexander K. Davison, Patton & Davison, Cheyenne, Wyoming.

Representing Appellees, S–14–0215: Randall B. Reed and David J. Willms, Dray, Dyekman, Reed & Healey, P.C., Cheyenne, Wyoming. Argument by Mr. Reed.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

BURKE, Chief Justice.

[¶ 1] Ruby River Canyon Ranch, Ltd. entered into an agreement to purchase the eastern portion of the Squaw Peak Ranch from Dennis and Nancy Flynn and William and Gayle Kettlewell (Sellers). Sellers financed part of the purchase price and, after Ruby River defaulted on the Promissory Note, Sellers initiated foreclosure proceedings. Ruby River and its successor in interest, Western Conservation Partners I, LLC (Buyers), filed a complaint for declaratory judgment and a motion for a temporary restraining order to halt the foreclosure. Buyers subsequently amended their complaint, adding claims of fraud, breach of the covenant of good faith and fair dealing, and adverse possession. Sellers counterclaimed, asserting that Buyers had breached the terms of the Promissory Note. Both parties filed competing motions for summary judgment.

[¶ 2] The district court granted summary judgment in favor of Sellers on all claims. In Docket No. S–14–0215, Buyers challenge the grant of summary judgment in favor of Sellers with respect to Buyers' claim of adverse possession, as well as the grant of summary judgment in favor of Sellers on Sellers' breach of contract claim. In Docket No. S–14–0216, Sellers challenge the denial of their request for attorney's fees. We affirm the district court's award of summary judgment in Docket No. S–14–0215, and reverse the denial of Sellers' request for attorney's fees in Docket No. S–14–0216.

### ISSUES

[¶ 3] In Docket No. S–14–0215, Buyers present the following issues:

1. Were there disputed issues of material fact that precluded the court from granting summary judgment in favor of Sellers on Buyers' adverse possession claim?

2. Was the intent of the parties' Escrow Agreement to preserve the status quo of the foreclosure case or to act as a settlement agreement of the foreclosure case?

In Docket No. S–14–0216, Sellers present the following issue:

1. Did the district court err in denying Sellers' request for attorneys' fees in this case when the Sellers prevailed on all claims for relief asserted by Buyers?

### FACTS

[¶ 4] During the summer of 2003, Buyers expressed interest in purchasing the Squaw Peak Ranch, a 2,700 acre ranch near Douglas, Wyoming, from Sellers. In July, Buyers' agents toured the property and were allegedly informed that a certain 40–acre parcel was included in the property listed for sale. Buyers were subsequently provided with a legal description of the property which specifically excluded the 40–acre parcel.

[¶ 5] In September 2003, Buyers entered into an agreement to purchase the Squaw Peak Ranch from Sellers. The legal description of the property contained in the parties' purchase agreement specifically excluded the 40–acre parcel. The parties subsequently agreed to divide the purchase into separate transactions for the "East" and "West" portions of the ranch, which resulted in the creation of two additional purchase agreements. The 40–acre parcel at issue is adjacent to the East Ranch and was specifically excluded from the East Ranch Purchase Agreement. In October, Buyers sent correspondence to Sellers acknowledging that the 40–acre parcel at issue would be excluded from the purchase. On December 18, 2003, the parties closed on the sale of the East Ranch. Sellers agreed to finance a portion of the purchase price by accepting Buyers' Promissory Note, which was secured by a mortgage on the property. As with the legal description contained in the purchase agreements, the property description in the mortgage agreement specifically excluded the 40–acre parcel from the lands to be used as collateral for the loan.

[¶ 6] In May 2012, Sellers sent Buyers a notice of default for failure to make the required payments under the Promissory Note. After Buyers failed to cure the default, Sellers initiated foreclosure proceedings. In response, Buyers filed a complaint for declaratory judgment seeking release of property securing the loan and a motion for a temporary restraining order to halt the foreclosure. Prior to the scheduled foreclosure sale, the parties entered into an Escrow Agreement. The Agreement provided that Buyers would deposit $66,178.97, the disputed amount of interest owed under the Promissory Note, into an escrow account in return for Sellers' agreement to "look to the funds placed in escrow for payment of any amounts that remain due and owing under the Note as determined by the court in the Litigation, and to execute and deliver to Buyers a full release of the remaining property subject to the Mortgage."

[¶ 7] In June 2013, Buyers filed their first amended complaint asserting claims for fraud, slander of title, and breach of the covenant of good faith and fair dealing, and reasserting their request for declaratory relief. The Sellers moved for a partial dismissal of the complaint, and the district court

subsequently dismissed Buyers' slander of title claim. In January 2014, Buyers filed a second amended complaint which added a claim of adverse possession. In their second amended complaint, Buyers asserted that they had been in possession of the 40–acre parcel "continuously and without interruption" since December 18, 2003, the date of closing on the East Ranch. Buyers claimed that they had grazed livestock, hunted, and fished on the property in each year that the property had been in their possession. They further claimed that they had "traversed the Forty Acre Parcel with ATVs" and "maintained the boundary fence that touches the Forty Acre Parcel" during the period that the property was in their possession.

[¶ 8] On March 7, 2014, Sellers filed their answer to Buyers' second amended complaint and asserted a counterclaim seeking judgment on the Buyers' Promissory Note. On March 10, 2014, Sellers granted to Buyers, in writing, permissive use of the 40 acres at issue. Both parties subsequently filed motions for summary judgment. After holding a hearing on the motions, the district court granted summary judgment in favor of Sellers and ordered Buyers to deliver the $66,178.97 in escrow to Sellers. The court denied Sellers' request for attorney's fees. Buyers timely appealed the district court's decision granting summary judgment in favor of Sellers. Sellers cross-appealed, challenging the denial of their request for attorney's fees. The appeals were consolidated for argument and decision. Additional facts will be presented as necessary in the discussion below.

### STANDARD OF REVIEW

[¶ 9] We apply the following standard of review to a district court's summary judgment decision:

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essen-

tial element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.,* 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Singer v. Lajaunie,* 2014 WY 159, ¶ 19, 339 P.3d 277, 283 (Wyo.2014) (quoting *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC,* 2008 WY 101, ¶ 8, 191 P.3d 125, 128–29 (Wyo.2008)). We consider the record from a viewpoint most favorable to the party opposing summary judgment, giving to him all favorable inferences that can be drawn reasonably from the facts set forth in the affidavits, depositions, and other material properly appearing in the record. *Singer,* ¶ 19, 339 P.3d at 283.

### DISCUSSION

### I. Docket No. S–14–0215

**Adverse Possession**

[¶ 10] In their first issue, Buyers challenge the district court's grant of summary judgment in favor of Sellers with respect to Buyers' claim of adverse possession. To establish adverse possession, Buyers must demonstrate actual, open, notorious, exclusive, and continuous possession of the disputed parcel which is hostile and under claim of right or color of title. *Graybill v. Lampman,* 2014 WY 100, ¶ 27, 332 P.3d 511, 519 (Wyo. 2014). Possession must be for the statutory period of ten years. *Murdock v. Zier,* 2006 WY 80, ¶ 10, 137 P.3d 147, 150 (Wyo.2006); Wyo. Stat. Ann. § 1–3–103 (LexisNexis 2013). The test for adverse possession imposes shifting burdens upon the parties:

> When there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. However, if a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession.

*Helm v. Clark,* 2010 WY 168, ¶ 8, 244 P.3d 1052, 1057 (Wyo.2010) (quoting *Cook v. Eddy,* 2008 WY 111, ¶ 7, 193 P.3d 705, 708 (Wyo. 2008)). We have said that an adverse possession claimant "must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Rutar Farms & Livestock, Inc. v. Fuss,* 651 P.2d 1129, 1134 (Wyo.1982) (quoting *Marvel v. Barley Mill Road Homes, Inc.,* 104 A.2d 908, 911 (Del.Ch.1954)).

[¶ 11] Buyers assert that there are genuine issues of material fact with respect to whether they possessed the 40–acre parcel for the ten-year period prior to March 10, 2014, when Sellers granted Buyers express permission to use the property. Buyers do not dispute that the 40–acre parcel was inaccessible from January to April 2004. They claim that the statute of limitations began to run as of the date of closing on the sale of the East Ranch, in December 2003, because the Sellers "knew the property intimately" and "knew that [the 40–acre parcel] was not fenced off internally from the rest of [the] ranch." According to Buyers, "the mere sale of the property coupled with an intimate knowledge of the fences and that the buyers would be in possession was sufficient to start the statute of limitations clock running." Buyers also claim, alternatively, that the statute of limitations began to run a few days after closing when Reid Rosenthal, an agent of Ruby River, inspected the subject parcel for approximately an hour to evaluate water resources on the property.

[¶ 12] The district court determined that Buyers had not demonstrated the existence of a genuine issue of material fact because, even assuming the truth of Buyers' claims with respect to their use of the 40–acre parcel, they could not demonstrate actual possession of the property for the statutory period. The court concluded as follows:

36. Because Mr. and Mrs. Flynn, the record owners of the property, granted Plaintiffs permission to use the Disputed Parcel in a letter dated March 10, 2014, this Court must look to Plaintiffs' use of the lands prior to March 10, 2004.

37. By all accounts, the Disputed Lands were inaccessible during the winter months in 2004 and the *earliest* possible possession by Plaintiffs would have occurred in April or May 2004. Access to the Disputed Lands is, with little exception, impossible during the winter and early spring months. Plaintiffs have confirmed that the post-sale access to the Disputed Parcel consisted of a brief visit in December 2003 and then nothing more until April or May 2004. Since the deed they received in December 2003 did not include the Disputed Parcel, they exercised no constructive possession prior to the date of actual use.

38. Suffice it to say that Plaintiffs are unable to establish *any* possession or occupancy of the Disputed Parcel prior to April 2004 but for a brief walk of the property in December 2003. This December 20, 2003 visit consisted of a "walk[ ] to all the various pond sites and potential pond sites." *Rosenthal Depo.* p. 85, ln. 1–4. This was Plaintiffs' first access of and to the Disputed Parcel and lasted "an hour maybe" in duration. *Id.* at p. 87, ln. 5–14.

39. This Court simply cannot conclude that a one-hour viewing of the Disputed Parcel on December 20, 2003 is sufficient to equate to possession or occupancy of the Disputed Parcel so as to put the landowner on notice of the hostility of the possession and notify him that his title is in jeopardy. *See Rutar Farms & Livestock, Inc. v. Fuss,* 651 P.2d 1129, 1134 (Wyo.1982).

(Emphasis in original.) Accordingly, the district court determined that Sellers were entitled to summary judgment on Buyers' claim of adverse possession.

[¶ 13] We agree with the district court. In order to establish adverse possession, Buyers must show they had actual possession of the subject property. *Graybill,* ¶ 28, 332 P.3d at 520. Buyers' assertions that Sellers "knew" that Buyers' use of the 40–acre parcel was "inevitable," even if true, are not sufficient to demonstrate Buyers had actual possession of the 40–acre parcel during the period prior to April 2004.

[¶ 14] Further, we are not persuaded by Buyers' claim that Mr. Rosenthal's Decem-

ber 2003 inspection of the property is sufficient to create a genuine issue of material fact. With respect to the requirement that possession be open and notorious, we have stated that

> The acts of dominion over land claimed to be adversely possessed must be so open and notorious as to put an ordinarily prudent owner on notice that the land is being used by another as his or her property. Put another way, if the actions of the claimant openly and overtly demonstrate control or use that is consistent with the type of land in dispute, this element is satisfied. Although the enclosure of land may render the possession of land open and notorious, *see Davis* [*v. Chadwick,* 2002 WY 157], ¶ 9, 55 P.3d 1267, 1270 [ (Wyo.2002) ], it is not the only way in which possession can be open and notorious.

*Graybill,* ¶ 30, 332 P.3d at 520–21 (footnote omitted). The only act of "possession" asserted by Buyers over the four-month period from December 2003 to April 2004 is a single, hour-long walk through the subject property by Mr. Rosenthal. Buyers provide no legal authority supporting their contention that this inspection is sufficient to demonstrate actual, notorious, hostile, and exclusive possession of the property. We note, however, that several jurisdictions have held that merely walking on property is *not* sufficient to establish adverse possession. *See, e.g., Harris v. Walden,* 314 N.C. 284, 333 S.E.2d 254, 258 (1985) ("Defendants purchased their property in 1973. The plaintiff instituted this lawsuit in January of 1981. The only evidence of adverse possession offered by defendants prior to the year 1975 was Mr. Walden's testimony that he walked the boundaries he claims in 1973 and that his son built a rifle range in the area. . . . Under the facts of this case, these acts are more in the nature of trespasses than acts of dominion indicating ownership."); *Hawkins v. Burleigh,* 333 So.2d 359, 361 (La.App.1976) ("From 1934 to 1967 [the adverse possession claimant] did nothing more than walk across the property and pick crabapples which in no way suggested he was maintaining adverse possession."); *Shilts v. Young,* 567 P.2d 769, 777 (Alaska 1977) ("Being on the property at

least once a year for a half or full day and walking the boundary lines hardly would give indication to the owner that there was a hostile claim. Yet testimony was limited to those acts on the property. Significantly, there was no clearing of land, construction of buildings or fences, placing of signs or any other physical evidence on the property indicating a hostile claim."). Even assuming the truth of Buyers' assertion that Mr. Rosenthal walked on the property in December 2003, we conclude this activity is not sufficient to create a genuine issue with respect to whether Buyers' possession was "so open and notorious as to put an ordinarily prudent owner on notice that the land is being used by another as his or her property." We find no error in the district court's determination that Mr. Rosenthal's inspection was not sufficient to demonstrate actual, notorious, hostile, and exclusive possession of the subject property. Because the statute of limitations could not have started to run until at least April 2004, the district court correctly concluded that Buyers failed to establish the elements of adverse possession for the requisite ten-year period.

**Enforceability of Escrow Agreement**

■ [¶ 15] In their second issue, Buyers claim the district court erred in granting Sellers' motion for summary judgment to recover interest due under the Buyers' Promissory Note. Buyers do not challenge the district court's determination that they were responsible for the disputed amount of interest owed under the Promissory Note. Rather, they contend that Sellers are prevented from enforcing the judgment against Buyers because the Promissory Note contained a non-recourse clause providing that Sellers could recover any deficiency only by repossessing the property securing the Note.

[¶ 16] The provision relied on by Buyers is contained in Paragraph 7 of the Promissory Note. That paragraph provides as follows:

> This is a nonrecourse Note and, anything herein to the contrary notwithstanding, Payee agrees for itself, its representatives, successors, endorsees, and assigns that (a) neither Maker nor its representatives . . . shall be personally liable on this Note, it

being intended that Maker's obligation to pay the principal of this Note with interest thereon, and any additional indebtedness under this Note and/or the Mortgage and Security Agreement, is included for the sole purpose of establishing the existence of the indebtedness represented hereby and (b) in the event of default on this Note or the Mortgage and Security Agreement, Payee ... shall look for payment solely to the security of the Property which is the subject matter of the Mortgage and Security Agreement and will not make any claim or institute any action or proceeding against Maker ... for payment of this Note (or for any deficiency remaining after application of the Property which is the subject of the Mortgage and Security Agreement); provided, however, that nothing herein contained shall be construed to release or impair the indebtedness evidenced by this Note, or of the lien upon the Property mortgaged to secure it, or to preclude the application of said mortgaged Property to the payment hereof in accordance with the terms of the Mortgage and Security Agreement.

[¶ 17] As noted above, Sellers sent Buyers a notice of default for failure to make the required payments under the Promissory Note and, after Buyers failed to cure the default, Sellers initiated foreclosure proceedings against Buyers. In order to halt the foreclosure proceedings, Buyers entered into an Escrow Agreement with the Sellers which provided that Buyers would deposit the disputed amount of interest owed under the Promissory Note into an escrow account in return for Sellers' agreement to release the property securing the mortgage. That Agreement provides, in relevant part, as follows:

D. Due to an alleged default under the terms of the Note and Mortgage, Sellers invoked the power of sale foreclosure provisions of the Mortgage. Buyers filed a court action seeking to stop the foreclosure and to have the court determine the rights of the parties under the Note and Mortgage....

E. The Buyers have agreed to deposit the disputed payment amount into a segregated escrow account at the Converse County Bank (the "Escrow Agent") and to pay over to Sellers the remaining amount which is not in. dispute. Sellers have agreed to look to the funds placed in escrow for payment of any amounts that remain due and owing under the Note as determined by the court in the Litigation, and to execute and deliver to Buyers a full release of the remaining property subject to the Mortgage.

. . .

**Terms:**

. . .

1.3 Buyers and Sellers agree to be bound by, and to give full effect to, the Court's decision delivered at the conclusion of the Litigation and to instruct the Escrow Agent in writing to deliver the Escrowed Funds in accordance with the Court's decision. Buyers and Sellers agree that the amount due under the Note and Mortgage is disputed and may differ from the amount of the Escrowed Funds. Neither Buyers nor Sellers waive any right to seek recovery of a greater or lesser amount than that set forth in Section 1.1 hereof and hereby reserve all rights regarding the amount due.

1.4 Buyers agree that in return for Sellers executing and delivering the partial release of mortgage referred to in Section 1.2(a) above, Sellers may look to the Escrowed Funds for payment of amounts deemed to be due either by mutual settlement of the Litigation by the Buyers and Sellers, or by the court at the conclusion of the Litigation.

[¶ 18] Buyers claim the Escrow Agreement is unenforceable because they received no consideration for executing the Agreement. They contend, in essence, that Sellers had a pre-existing duty to release the property encumbered by the mortgage and that Sellers therefore gave nothing in return for Buyers' deposit of funds into an escrow account. According to Buyers, "release of any and all remaining property was required under the express terms of the mortgage. Sufficient funds had been paid to secure a full release but the Appellees refused to provide

the release and instead began the foreclosure." (Emphasis omitted.) This argument is without merit. The Agreement was supported by consideration. Foreclosure proceedings were halted.

[¶ 19] The district court found that Buyers owed the disputed amount of interest under the Promissory Note, and Buyers do not challenge that decision in this appeal. As a result, Sellers were under no obligation to release the encumbered property at the time the parties entered into the Escrow Agreement. In their complaint, Buyers asserted that they were "currently in the process of closing on a transaction that involves the property at issue which has been interrupted by the foreclosure," and that they were "in danger of losing the benefit of this transaction because of the actions of [Sellers]." Buyers thereby acknowledged that they were receiving a benefit from entering into the Escrow Agreement with Sellers. As explained by the district court:

> As part and parcel to [the Escrow Agreement], Defendants released all property still encumbered by the Mortgage, and Plaintiffs placed liquid assets into the escrow account for purposes of resolving the dispute. Thus, the parties substituted the cash for the property as collateral for the loan. The Escrow Agreement reflected the parties' understanding that these amounts were to be distributed to whichever party prevailed on the breach of contract claim in this litigation. The parties did so to prevent the foreclosure process from proceeding as to the collateral subject to the mortgage. Thus, while the breach of contract claim was yet to be litigated, the foreclosure sale was avoided specifically through the deposit of funds in the escrow account. Stated another way, Defendants gave up what Plaintiffs now claim was their sole remedy in return for the deposit of the agreed upon funds and the ultimate receipt of those funds if the Court determined such to be appropriate. It is somewhat disingenuous for Plaintiffs to argue now that Defendants['] remedy must be limited to that which Defendants surrendered at Plaintiffs' behest.

We agree with the district court's analysis. The parties' Escrow Agreement modified the terms of the Promissory Note, and that modification was supported by adequate consideration. We find no error in the district court's award of summary judgment in favor of Sellers.

### II. Docket No. S–14–0216

 [¶ 20] In Docket No. S–14–0216, Sellers challenge the district court's denial of their request for attorney's fees. When the determination of whether a party is entitled to attorney's fees is based upon a contract providing for such fees, our usual rules of contract interpretation apply. *Thorkildsen v. Belden*, 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo.2011). When contractual language is clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts. *Id.* We review questions of law *de novo* without giving any deference to the district court's determinations. *Id.* Even if fees are provided by a valid contractual provision, however, "a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable." *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo.2012) (quoting *Dewey v. Wentland*, 2002 WY 2, ¶ 50, 38 P.3d 402, 420 (Wyo. 2002)).

[¶ 21] The district court addressed Sellers' request for attorney's fees in summary fashion, stating that "Defendants have requested they be awarded their attorneys' fees in this matter. The Court declines to do so but will order that Defendants recover their costs herein pursuant to Rule 501 of the Uniform Rules for the District Courts." Sellers contend that they were entitled to attorney's fees pursuant to express contractual authorization. We agree with Sellers.

[¶ 22] Section XV of the parties' Purchase Agreement for the East Ranch provides that "In any litigation arising out of this agreement, the successful litigant shall be entitled to recover its costs and disbursements, including reasonable attorneys' fees to be fixed and determined by the court and any other amounts allowed by law." The Agreement

stated that the purchase would be financed by the Buyers' Promissory Note and sets forth the terms of the Note. Paragraph 6 of the Promissory Note, in turn, provides that Sellers "shall be entitled" to an award of reasonable attorney's fees incurred as a result of default on the Note:

Upon an event of default as defined above, not timely cured by Maker as provided above, Payee may declare the entire unpaid principal balance, together with accrued interest, to be immediately due and payable without presentment, demand, protest or other notice of any kind.... Payee shall be entitled to all costs of collection incurred by reason of the default, including court costs and reasonable attorney's fees, including such expenses incurred before legal action or Bankruptcy proceedings, during the pendency thereof, and continuing to all such expenses in connection with appeals to high courts arising out of matters associated herewith, which amounts shall become additional debt under this Note and the Mortgage and Security Agreement.

Sellers initiated this action against Buyers to enforce the terms of the Purchase Agreement and Promissory Note. As noted above, the district court determined that Buyers had defaulted on their obligation to pay interest under the Note, and Buyers do not challenge that decision. Accordingly, pursuant to Section XV of the parties' Purchase Agreement and Paragraph 6 of the Promissory Note, Sellers are entitled to reasonable attorney's fees as a result of their efforts to collect the amount awarded by the district court.

■ [¶ 23] Buyers contend that because the district court viewed the amount deposited in escrow as a substitution of collateral, "any recovery [by Sellers] would be capped at the amount of collateral available in the escrowed funds to satisfy the obligation."

According to Buyers, "Since the entire escrow amount was awarded to [Sellers] as a judgment on the note the question of the attorney fee award and costs [is] of no consequence since no funds (collateral) remain." We disagree. Buyers present no argument or authority indicating that the Escrow Agreement modified the attorney's fees provisions of the Purchase Agreement and Promissory Note. Further, the parties' Escrow Agreement specifically authorizes an award of attorney's fees "in addition to" the escrowed funds:

Buyers and Sellers shall not be precluded from requesting an award of attorney's fees and costs, as well as all amounts over the Escrowed Funds described in Section 1.1(a) hereof, from the court in the Litigation, and any such award shall be immediately payable to the prevailing party, *in addition to* the Escrowed Funds.

(Emphasis added.) It is undisputed that Sellers were the prevailing party. Accordingly, they were entitled to an award of attorney's fees, and the record discloses no reasonable basis for the district court's failure to award those fees. The district court's decision denying such an award must be reversed. ·

### *CONCLUSION*

[¶ 24] In Docket No. S–14–0215, we affirm the district court's grant of summary judgment. In Docket No. S–14–0216, we reverse the district court's denial of Sellers' request for attorney's fees and remand to the district court with instructions that it award reasonable attorney's fees to Sellers.